**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**AMY MARSHALL PUCKETT,**

      **Petitioner,**

**vs.**

                          **CASE NO. 4:08cv170-RH/WCS**

**WARDEN PAID AUGUSTINE,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

This is an amended petition for writ of habeas corpus filed by Amy Marshall Puckett pursuant to 28 U.S.C. § 2241. Docs. 7 and 8 (memorandum). Respondent filed an answer, doc. 12, and Petitioner filed a traverse, doc. 13. Respondent was permitted to file a reply. Doc. 15.

Petitioner seeks early release pursuant to 18 U.S.C. § 3621(e)(2)(B) due to her participation in the Residential Drug Abuse Program (RDAP). Petitioner asserts that she completed that program on April 3, 2008. Doc. 8, p. 2. She was found to be ineligible for a sentence reduction because she was convicted of a conspiracy to distribute controlled substances and, at sentencing, received a two point enhancement

for possession of a firearm by a co-conspirator.  Doc. 12, affidavit of Sarah Schuh (doc. 12-1 on ECF (electronic case filing), ¶ 13).

Petitioner asserts that while her co-conspirators possessed firearms, she herself did not.  Doc. 8, p. 4.  She contends that she was convicted of a "nonviolent" felony as intended by § 3621(e)(2)(B) and thus eligible for a reduction in her sentence, and that the Bureau's rule violates the statute.  *Id.*  Petitioner also contends that the Bureau of Prison violated the Administrative Procedures Act, relying upon Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008).  *Id.*, p. 8.

Respondent concedes that the court has jurisdiction (the petition was filed while Petitioner was serving her prison sentence) and that Petitioner exhausted her administrative remedies.  Doc. 12, pp. 2-3.

Petitioner was released from her 48 month sentence on July 29, 2009.  *See*, www.bop.gov (inmate number 19330-058).  The probation office of this Division advises that Petitioner is currently serving a period of supervised release that will end July 28, 2011.  Success on this petition might cause that supervision to end earlier, and for that reason, the petition is not moot.  Mitchell v. Middlebrooks, 287 Fed. Appx. 772, 775 (11th Cir. 2008), cited in Nash v. Middlebrooks, 2009 WL 225547, *1 (N.D. Fla. July 24, 2009) (No. 5:08cv39-RH/AK).  *See also,* Johnson v. Pettiford, 442 F.3d 917, 918 (5th Cir. 2006); Levine v. Apker, 455 F.3d 71, 76-77 (2d Cir. 2006); United States v. Larson, 417 F.3d 741, 747 (7th Cir. 2005), *cert. denied*, 547 U.S. 1005 (2006); United States v. Castro-Rocha, 323 F.3d 846, 847 n. 1 (10th Cir. 2003), *abrogated on other grounds* by Lopez v. Gonzales, 549 U.S. 47, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006); United States v. Molak, 276 F.3d 45, 48-49 (1st Cir. 2002); United States v. McCoy, 313 F.3d 561,

564 (D.C. Cir. 2002) (*en banc*); <u>Gunderson v. Hood</u>, 268 F.3d 1149, 1153 (9th Cir.

2001).

Title 18, Section 3621(e)(2)(B) provides:

> The period a prisoner convicted of a nonviolent offense remains in custody
> after successfully completing a treatment program may be reduced by the
> Bureau of Prisons, but such reduction may not be more than one year
> from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B).  The Bureau of Prisons has, by regulation, determined to

exclude from this sentence reduction those prisoners whose offense "involved the

carrying, possession, or use of a firearm . . . ."  28 C.F.R. § 550.55(b)(5)(ii).

In <u>Lopez v. United States</u>, 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001),

the defendant had possessed a firearm in connection with his offense of possession

with intent to distribute methamphetamine, and was denied a RDAP sentence reduction.

531 U.S. at 236, 121 S.Ct. 719.  The Court held that the Bureau's implementing

regulation, 28 CFR § 550.58(a)(1)(vi)(B) (2000), categorically denying early release to

prisoners "whose current offense is a felony attended by 'the carrying, possession, or

use of a firearm' " "is a permissible exercise of the Bureau's discretion under 18 U.S.C.

§ 3621(e)(2)(B)."  531 U.S. at 232, 121 S.Ct. 718.

<u>Lopez</u> set forth the history of the issue.  In a program statement in 1995, the

Bureau had determined that a prisoner who had a drug trafficking conviction and had

received a two level sentence enhancement for possessing a dangerous weapon during

commission of a drug offense had committed a "crime of violence" and was ineligible for

the sentence reduction.  *Id.*  The Court noted that the courts of appeals had split on

whether this definition was valid.  *Id.*, 531 U.S. at 234, 121 S.Ct. at 718-719.  In

response in 1997, the Bureau published the regulation before the Court.  *Id.*  Instead of

giving a definition to a crime of violence as mandated by § 3621(e)(2)(B), however, the

new regulation relied upon the Director's statutory discretion.  *Id.*  The Court explained:

> In sum, the 1995 rule defined the statutory term "prisoner convicted of a nonviolent offense" to exclude categorically an inmate who possessed a firearm in connection with his offense.  The current regulation categorically excludes such an inmate, not because § 3621(e)(2)(B) so mandates, but pursuant  to the Bureau's asserted discretion to prescribe additional early release criteria.  Drug traffickers who possess firearms when they engage in crimes are no longer characterized as "violent" offenders within the meaning of the statute.  But they are bracketed, for sentence reduction purposes, with persons currently incarcerated for "nonviolent offense[s]" who in the past committed crimes qualifying as violent.  The preconviction conduct of both armed offenders and certain recidivists, in the Bureau's view, "suggest [s] that they pose a particular risk to the public."

531 U.S. at 235-236, 121 S.Ct. 719.

The Eighth Circuit in <u>Lopez</u> had held that the Bureau had discretion to establish a

categorical rule, rather than making individual determinations, and that the BOP's

interpretation of the statute was entitled to deference.  531 U.S. at 237, 121 S.Ct. at

720.  Noting a new conflict among the circuits, the Supreme Court affirmed the Eighth

Circuit.  The Court noted the Bureau's position and agreed with it:

> Because Congress left the question unaddressed, the Bureau maintains, the agency may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, *see Chevron,*[1] 467 U.S., at 844, 104 S.Ct. 2778, in a manner that is not arbitrary or capricious, *see* 5 U.S.C. § 706(2)(A).  In this instance, the Bureau urges, it has acted reasonably:  Its denial of early release to all

---

[1] <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).  *Chevron* requires that a court "defer to an administrative agency's interpretation of a statute it is entrusted with administering if: (1) the language of the statute is silent or ambiguous with respect to the particular issue and (2) the agency's interpretation is reasonable." <u>Lin v. U.S. Atty. Gen.</u>, 555 F.3d 1310, 1315, n. 4 (11th Cir. 2009).

> inmates who possessed a firearm in connection with their current offense
> rationally reflects the view that such inmates displayed a readiness to
> endanger another's life; accordingly, in the interest of public safety, they
> should not be released months in advance of completing their sentences.

531 U.S. at 239-240, 121 S.Ct. at 721. The Court said that where Congress has

enacted a law that does not answer the precise question, the Court must decide

whether the BOP, as the agency empowered to administer the program, has "filled the

statutory gap 'in a way that is reasonable in light of the legislature's revealed design.' "

531 U.S. at 242, 121 S.Ct. at 722 (citations, including *Chevron*, omitted). The Court

concluded that the BOP's interpretation "is reasonable both in taking account of

preconviction conduct and in making categorical exclusions." *Id.* The Court concluded:

> The Bureau reasonably concluded that an inmate's prior involvement with
> firearms, in connection with the commission of a felony, suggests his
> readiness to resort to life-endangering violence and therefore
> appropriately determines the early release decision.

531 U.S. at 244, 121 S.Ct. at 724.

While Lopez considered only the 1997 interim rule, that rule was made final on

December 22, 2000, and is identical. Gatewood v. Outlaw, 560 F.3d 843, 846 (8th Cir.

2009), *citing*, 65 Fed. Reg. 80745 (Dec. 22, 2000), *codified at* 28 C.F.R. § 550.58.[2]

Therefore, Lopez resolved the *Chevron* question, affording deference to the agency's

interpretation of the statute at least for a defendant convicted of a drug conspiracy who

actually possessed a firearm in furtherance of the conspiracy.

Defendant here had involvement with firearms by joining a conspiracy in which

the possession of firearms by others was in the furtherance of the conspiracy and was

---

[2] This is now 28 C.F.R. § 550.55 (2009).

foreseeable to her, and for that reason, received a two point sentencing enhancement.
United States v. Barner, 572 F.3d 1239, 1252 (11th Cir. 2009); United States v. Gallo,
195 F.3d 1278 (11th Cir. 1999). This is somewhat different from Lopez, but the
Bureau's interpretation of the statute is entitled to *Chevron* deference and is reasonable.
The activity of the conspiracy carried a significant risk that life-endangering violence
might result by the possession of firearms to further the conspiracy, and Defendant
willingly participated in it. Whittier v. Kobayashi, 581 F.3d 1304, 1309 (11th Cir. 2009)
("we have also repeatedly noted the dangerous, and often violent, combination of drugs
and firearms"). Thus, it is not unreasonable for the Bureau of Prisons to find that
Petitioner, who received the two point enhancement for the foreseeable possession of a
firearm by a co-conspirator, is ineligible for a sentence reduction under RDAP. Kiernan
v. Vasquez, Case No. 3:01cv470-RV/MD, doc. 11 (report and recommendation) and
doc. 14 (order adopting) (attached).

Petitioner also relies upon the Arrington decision. That court addressed the
question of whether, pursuant to 5 U.S.C. § 706(2)(A),[3] the regulation made permanent
in 2000 (identical to the 1997 interim rule) was arbitrary and capricious. 516 F.3d at
1112. The court found that its decision was not foreclosed by Lopez. *Id.*, at 1114. The
court said that Lopez had only decided "whether the Bureau had discretion to narrow
the class of prisoners eligible for early release under § 3621(e)," expressly did not

---

[3] Section 706(2)(A) provides that a reviewing court shall "hold unlawful and set
aside agency action, findings, and conclusions found to be – " "arbitrary, capricious, an
abuse of discretion, or otherwise not in accordance with law."

decide whether the rule violated the APA's notice and comment requirements, and was not engaged in § 706 review. *Id.*, at 1115-1116.

The Ninth Circuit said it could look "only to the administrative record to determine whether the agency has articulated a rational basis for its decision." *Id.* The court noted the usual rule governing review of administrative action, that *post hac* explanations will not do. *Id.*, at 1113, *citing*, SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943) and other cases.

The court said that the first rationale offered, that those convicted of offenses involving firearms pose a greater threat to public safety, was a *post hac* rationale raised first in the brief in the *Lopez* case, and had not been presented in the administrative record. *Id.* at 1113. The court declined to consider it for that reason.

The court said that the second rationale, the need for uniformity, was articulated in the record. *Id.*, at 1113-1114. The court noted that the Bureau had said, as it adopted the rule, that it did so due to the varying interpretations of the regulation in cases, which had prevented it from applying the rule in a uniform and consistent manner. *Id.*, at 1114. The court reasoned:

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical exclusion rule. The Bureau's stated desire for uniformity could have been accomplished in any number of ways. For example, the Bureau could have achieved uniformity by categorically including prisoners with nonviolent convictions involving firearms, thus making them eligible for early release: a result that would have been entirely consistent with the statute's aim of offering incentives for prisoner participation in residential substance abuse programs. Instead, it chose to achieve uniformity by categorically excluding such prisoners from eligibility. Although either choice in all likelihood would have withstood judicial scrutiny, the Bureau offered no explanation for why it exercised its discretion to select one

rather than the other. The agency's lack of explanation for its choice renders its decision arbitrary and capricious.

*Id.*, at 1114.

This reasoning seems to confuse the interest in uniform application of the statute with the method of achieving uniformity. A list of the categories of offenses to achieve uniformity of application may be either inclusive or exclusive. A list of inclusion (offenses of conviction which would not disqualify a prisoner from receiving RDAP sentence credit) would probably be far longer than a list of exclusion. But the method chosen by the Bureau to achieve the interest, uniformity of application, simply does not matter since the result is the same.

Further, the Bureau *did* state its reasons for desiring uniformity of application.

The Bureau said:

> The first interim rule attempted to define the term "crime of violence" pursuant to 18 U.S.C. 924(c)(3). Due to varying interpretations of the regulation and caselaw, the Bureau could not apply the regulation in a uniform and consistent manner.
>
> The third interim rule sought to resolve this complication. . . .

65 Fed. Reg. 80745, 80747 (Dec. 22, 2002). Uniformity, the Bureau's stated interest and the only interest relevant for § 706(a) review, is achieved by adopting clear categories that will apply uniformly throughout every circuit without variations by cases decided by different courts of appeal.[4]

---

[4] Although the Supreme Court was involved in review of the Bureau's statutory interpretation, not APA review, Lopez found that the Bureau of Prisons was reasonable in selecting categories for application of the statute instead of making individualized determinations.

This court, therefore, rejected the reasoning of <u>Arrington</u> last year. <u>Ables v. Eichenlaub</u>, Case No. 5:08cv204-RH/EMT, doc. 17, report and recommendation (also found at 2009 WL 722287 (N.D. Fla. Mar. 18, 2009)), and doc. 19, order adopting (attached). That report and recommendation listed a large number of district courts that, at that time, had rejected the reasoning of <u>Arrington</u>. This list of court decisions now rejecting <u>Arrington</u> has grown much longer, and includes three decisions of the courts of appeals: the Eighth Circuit's decision in <u>Gatewood v. Outlaw</u>, *supra*, <u>Gardner v. Grandolsky</u>, 585 F.3d 786 (3rd Cir. 2009), and <u>Handley v. Chapman</u>, 587 F.3d 273 (5th Cir. 2009).

All three cases from the courts of appeals found that the Bureau had adequately stated that public safety was a basis for the rule, and found no need to look to the interest of uniformity of application. As <u>Gatewood v. Outlaw</u> pointed out, the issue is agency rule-making under 5 U.S.C. § 553, which only provides that the agency must publish notice of proposed rule-making and afford interested persons an opportunity to participate. 560 F.3d at 847. Rule-making, said the Eighth Circuit, "need not be made on a confined administrative record." *Id.*

> Here, the BOP has consistently sought to implement the same substantive policy in the face of continued judicial resistance. In these circumstances, it is appropriate to discern the reasons for the agency's final rule from the various prior interim rules, Program Statements, and litigation positions reflecting that consistent policy. The Supreme Court discerned that public safety was the basis for the BOP's exclusion of firearm offenders and concluded that the agency's rule was substantively reasonable in *Lopez*, 531 U.S. at 244, 121 S.Ct. 714. That, we conclude, is all 5 U.S.C. §§ 553(c) and 706(2)(A) require.

*Id.*, at 847-848. The Eighth Circuit further said:

Moreover, we have no difficulty concluding, as the Court obviously did in *Lopez*, that public safety was the contemporaneous rationale for the interim and final rules, and not merely a post hoc rationalization by appellate counsel. The categories of offenses in the April 1996 amended Program Statement made it clear that BOP decided to exclude, not only those convicted of violent offenses, but also those whose offenses, either by inherent nature or by the manner in which they were committed, demonstrated a potential for violent behavior that made the inmate unsuitable for early release on public safety grounds.

\*　　　　　　\*　　　　　　\*

When the agency has articulated and acted on a consistent rationale throughout the course of a lengthy informal rulemaking process, the final rule is not arbitrary and capricious because the rationale was not fully reiterated in the final agency action.

*Id*., at 848. The Eighth Circuit further concluded that the need for uniformity was a second adequate basis to sustain the rule. *Id*. at 848-849. Gardner, a Third Circuit case, is in accord, relying upon Gatewood. Handley, also in accord, notes that the Bureau adopted a more detailed statement as the basis for its rule on March 16, 2009. 587 F.3d at 279-280, *citing*, Drug Abuse Treatment Program, 74 Fed. Reg. 1892, 1895 (Jan. 14, 2009). The reasoning of these circuits is more persuasive than that of the Ninth Circuit in Arrington. Petitioner is not entitled to relief on this claim.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2241 petition for writ of habeas corpus filed by Amy Marshall Puckett be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on March 5, 2010.

s/　　William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**

Case No. 4:08cv170-RH/WCS

**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

WILLIAM B. KIERNAN,
                    Petitioner,

vs.                                                    3:01cv470/RV/MD

JOSE M. VAZQUEZ,
                    Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court upon a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (doc. 1). Respondent has filed an answer (doc. 6), and petitioner has filed a motion for summary judgment in response (doc. 7).

### BACKGROUND

Petitioner was convicted in the United States District Court for the Southern District of Florida in 1998 of importation of marijuana, conspiracy to import hashish oil, and conspiracy to possess with intent to distribute hashish oil; he received a two-point sentence enhancement for possession of a firearm by a co-conspirator. (Doc. 1). He is presently serving the term of imprisonment imposed by the court at the Eglin Federal Prison Camp. On June 8, 2000, petitioner was given notice of his qualification to participate in the Bureau of Prison's ("BOP") Residential Drug Abuse Program ("RDAP")[1] and his provisional eligibility for a one-year sentence reduction pursuant to 18 U.S.C. § 3621(e). (Doc. 1, exs. A-7, A-8) (advising petitioner that he had become eligible for early release pursuant to Operations Memorandum No. 023-2000 (5164)). According to petitioner, he began the RDAP in February 2001.

---

[1]The RDAP is comprised of a residential unit-based component, an institution transitional services component, and a community-based transitional component. See 28 C.F.R. § 550.58.

ENTERED ON DOCKET 4/24/02 BY ___g___
( 1 /SC 58 1 (1) (a) (b) (c) (f)(ph) (p) (s) C SE PRCRP)

Copies sent to: Kiernan
(5/14)

U.S. DISTRICT CT.
NORTHERN DIST. FLA.

FILED

11

However, prior to completing the program, he was informed that he was no longer eligible for early release consideration in light of the Supreme Court's decision in *Lopez v. Davis*, 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) (holding that the BOP's policy denying § 3621(e)(2)(B) eligibility based on a sentence enhancement for gun possession was a permissible exercise of discretion). Doc. 1, Mem. of Law at 1, ex. A-12 - A-17.

According to the petition and memorandum in support, the BOP's rescission of petitioner's provisional eligibility for early release is (1) a misapplication of *Lopez*, because petitioner's two-point sentence enhancement was based on possession of a firearm by a co-conspirator; (2) an impermissible, retroactive application of *Lopez*; (3) improper because the BOP presented no clear reason why petitioner should be denied early release eligibility based upon a two-level gun enhancement; (4) improper because petitioner's early release was not provisional since he refused to sign the provisional change statement; (5) a breach of contract; and (6) a violation of petitioner's rights to equal protection and due process. Respondent states that the essential issue before the court is whether, in light of *Lopez*, it can order the BOP to grant petitioner a sentence reduction and argues that it cannot.[2]

## DISCUSSION

As part of the 1994 Violent Crime Control and Law Enforcement Act, the BOP was charged with making available "appropriate substance abuse treatment" for inmates with "treatable condition(s) of substance addiction or abuse." 18 U.S.C. § 3621(b). If an inmate completes a drug and alcohol treatment program authorized under 18 U.S.C. § 3621(e),

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

§ 3621(e)(2)(B). Thus the statute provides an incentive for inmates to enroll in and complete the treatment program. The BOP's statutory grant of discretion under the

---

[2]Petitioner alleges that he exhausted all necessary administrative remedies, which the government does not dispute.

statute is limited in only two respects:  first, that only inmates convicted of "non-violent offenses" be considered eligible for the sentence reduction; and second, that the sentence reduction not exceed one year.  *See Sesler v. Pitzer*, 926 F.Supp. 130, 132 (D. Minn. 1996).

Within § 3621 Congress did not set forth specific criteria which the BOP was mandated to apply in awarding the sentence reduction upon completion of the inmate's treatment program.  In 1995 the BOP therefore adopted a regulation establishing such criteria. *See* 28 C.F.R. § 550.58 (1995).  To clarify the regulation and provide a framework for BOP personnel determining eligibility for sentence reductions in a practical and uniform manner, the BOP also issued Program Statement 5162.02 in July 1995.  Upon challenge, the BOP's approach to implementing § 3621(e)(2)(B) was found by the Eleventh Circuit, among other courts, to be in conflict with the statute's plain meaning. *See Byrd v. Hasty*, 142 F.3d 1395, 1398 (11th Cir. 1998) (stating that "BOP exceeded its statutory authority when it categorically excluded from eligibility those inmates convicted of a nonviolent offense who received a sentencing enhancement for possession of a firearm."). Consequently, in October 1997 the BOP implemented a revised regulation.  The language of the revised 28 C.F.R. § 550.58 (1997) provides, in pertinent part, that the "following categories of inmates are not eligible for early release":

> (vi) [i]nmates whose current offense is a felony . . .
> (B) [t]hat involved the carrying, possession, or use of
> a firearm . . .

28 C.F.R. § 550.58(a)(1)(vi)(B) (1997).  Thus, under the revised regulation, those inmates convicted of a felony offense "that involved" the possession of a firearm are excluded from eligibility for the drug program sentence reduction.

The revised regulation was also challenged successfully, at least initially.  In *Kilpatrick v. Houston*, 36 F.Supp.2d 1328 (N.D.Fla. 1999), the district court concluded that the BOP's interpretation of § 3621 in the 1997 regulation continued to be in conflict with the plain and unambiguous language of the statute and thus an improper extension of the agency's authority.  The Eleventh Circuit affirmed the district court's decision and denied a suggestion for rehearing en banc on December

10, 1999.  On January 16, 2001, however, following its January 10, 2001, decision in *Lopez*, the Supreme Court granted the BOP's pending petition for certiorari in *Kilpatrick* and remanded the case to the Eleventh Circuit with instructions to reconsider its decision in light of *Lopez*.  On August 31, 2001, the Eleventh Circuit entered an order in *Kilpatrick* dismissing the appeal as moot because the petitioner had been released from custody and remanding to the district court with instructions to dismiss as moot.  On December 17, 2001, the district court entered an order dismissing the habeas corpus petition as moot.

Although in the instant case the government does not explain the BOP's response following the Eleventh Circuit's affirmance of *Kilpatrick*, the court takes judicial notice of the "Notice to Court," filed May 19, 2000, in *Aycock v. Vazquez*, 3:00cv59/LAC/SMN.  In this Notice, the government stated that in light of *Kilpatrick* the BOP had recently implemented a revised policy, Operations Memorandum No. 023-2000 (5164), which was applicable to inmates located in the Eleventh Circuit.  In accordance with *Kilpatrick*, the government advised, such inmates no longer would be precluded from receiving a § 3621(e) sentence reduction based on a two-point sentence enhancement for weapon possession in connection with a nonviolent offense.  Nevertheless, the BOP still maintained that in the exercise of the director's discretion under the statute, it could deny sentence reductions based on the two-point enhancement.  The court further takes judicial notice of the "Memorandum for All Chief Executive Officers" entitled "Implementation of *Lopez v. Davis*," filed July 1, 2001, in *Wright v. Vazquez*, 3:01cv273/RV/SMN at doc. 1, ex. D.  The memorandum notes that in the Eleventh Circuit *Kilpatrick* had created a "small population of BOP inmates who, despite involvement with weapons, would be eligible for early release. In light of the *Lopez v. Davis* decision the Bureau will now return these inmates to "'INELIGIBLE' status." *Id.*

In claims one and three, petitioner contends the BOP improperly denied his right to be eligible for a potential sentence reduction after the successful completion of a drug treatment program based upon his two-point sentence enhancement for possession of a firearm, because it was a co-conspirator and not petitioner who

possessed the firearm, and because the firearms played no significant or meaningful role in petitioner's offense.  He argues that "The Court ruled in *Lopez* that if a defendant actually possessed a gun on his person, while in commission of a crime, and was not charged with a 924(c) crime, but did, however, receive a two level gun enhancement, [he] could be denied eligib[ility] for early release consideration.  No where in *Lopez* did the Court address eligibility based on a two point firearm possession sentence enhancement, i[f] that possession was by a co-conspirator or mere presence of a firearm."  (Doc. 1 at 4.).

Petitioner reads the holding of *Lopez* too narrowly.  The question before the *Lopez* Court was whether the BOP has discretion to delineate, as an additional category of ineligible inmates, those whose current offense is a felony involving a firearm.  *Lopez*, 351 U.S. at 238, 121 S.Ct. at 721.  The Court answered the question in the affirmative, holding that the "Bureau may categorically exclude prisoners based on their preconviction conduct."  *Lopez*, 531 U.S. at 244, 121 S.Ct. at 724.  The Court also held that the BOP's decision to exclude from the program inmates whose offenses involved firearms was a reasonable decision.  *Id.*  In analyzing 28 C.F.R. § 550.58(a)(1)(vi)(B), the *Lopez* Court read the regulation as a categorical exclusion of inmates whose current offense is a felony <u>involving</u> a firearm.  Neither the Court's analysis of the regulation nor its holding in *Lopez* compels the BOP to interpret 28 C.F.R. § 550.58(a)(1)(vi)(B) as excluding only those inmates who actually used the firearm involved in the offense or possessed it on his person.

In the instant case, petitioner was convicted of a felony and received a two-point sentence enhancement for possession of a firearm by a co-conspirator.  The BOP denied him eligibility for early release based on the fact that his offense involved a firearm.  The holding in *Lopez* dictates a conclusion that the BOP's decision concerning petitioner's eligibility was not arbitrary or capricious.  If petitioner believes that the imposition of the two-point enhancement was unfair or improper because it was based on the actions of a co-conspirator, the proper means by which to assert such a claim is through direct appeal or by collateral review under 28 U.S.C. § 2255.  This court lacks jurisdiction to hear challenges to the

imposition rather than the execution of an inmate's sentence. Only challenges to the execution or carrying out of initially valid confinements are properly filed pursuant to § 2241. *See Broussard v. Lippman*, 643 F.2d 1131 (5th Cir. Unit A Apr. 1981), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981).

Petitioner's *ex post facto* claim also lacks merit. In *Lopez* the Supreme Court upheld the BOP's interpretation of its authority under § 3621, as expressed in the 1997 version of its implementing regulation, 28 C.F.R. § 550.58, to deny eligibility for a sentence reduction. This is the regulation that was applied to petitioner. No statute or regulation has been applied retroactively to petitioner in this case, much less done so impermissibly. Furthermore, the rescission of Operations Memorandum No. 023-2000 (5164), which was implemented as a direct consequence of the Eleventh Circuit's decision in *Kilpatrick* and under which the BOP granted petitioner provisional eligibility for early release, was not impermissible. The Supreme Court's abrogation of *Kilpatrick* in *Lopez* in effect abrogated Operations Memorandum No. 023-2000 (5164) as well, with the result of placing petitioner in the same position he would have been in had the policy never been effected in the first place; no new policy was retroactively applied to petitioner which caused his status to change. It simply does not matter that petitioner might have benefitted from a policy temporarily enacted by the BOP in response to this circuit's dictate in *Kilpatrick* – which was later rejected by the Supreme Court -- and has been disappointed by the nullification of the policy post-*Lopez*.[3]

---

[3]Petitioner refers to the Ninth Circuit Court of Appeals' position regarding the BOP's ability to retroactively apply a new rule which categorically excludes certain prisoners from § 3621(e) sentence reduction eligibility. *See Bowen v. Hood*, 202 F.3d 1211 (9th Cir. 2000) and *Cort v. Crabtree*, 113 f.3d 1081 (9th Cir. 1997). In *Bowen*, the court concluded that the BOP violated the retroactivity doctrine when it applied rule changes to certain inmates to deny them early release eligibility. Having previously been advised by the BOP of their eligibility for early release, the inmates had clearly settled expectations in this regard. Therefore the BOP could not, the court stated, "take away with its left hand what it has already given with its right." *Id.* at 1223.

Ninth Circuit precedent of course is not binding in this circuit. In any event, the Ninth Circuit's view, as outlined above, is not relevant here. As discussed previously, in this case petitioner was not subject to the BOP's imposition of a new rule or policy. The Operations Memorandum applicable to petitioner certainly did "change," but only in the sense that it was voided. As noted, this invalidation was brought about not by a change in the BOP's position on this issue but by the Supreme Court's abrogation of *Kilpatrick* in *Lopez*; the BOP did not "take away with its left hand what it ha[d] already given with its right." *Id.*

Petitioner's claim that his early release was not provisional because he refused to sign the statement on his Notice is without record support. Petitioner has attached a copy of the Notice (*see* doc. 1, ex. A-7 - A-8), which contains the following provision:

> If applicable, I understand that a determination of early release for me if provisional, may change, and depends on continued positive behavior and successful participation in all components of the program, including community transitional services.
> Inmate's signature _____
> (indicate if refused to sign)

(Doc. 1, ex. A-8.). While there is no signature on the document, there is also no indication petitioner refused to sign.

Petitioner's claim of breach of contract should not be cognizable under § 2241 since it does not allege that petitioner is being held in custody in violation of the laws or constitution of the United States as contemplated by § 2241. Even assuming otherwise, *arguendo*, there was no enforceable "contract." Under the regulation and in the proper exercise of its discretionary authority, the BOP was not bound in any way to grant petitioner early release. Moreover, the agreement petitioner signed merely spelled out his obligations for participation in the RDAP and promised nothing regarding his eligibility for early release. (Doc. 1, exs. A-1 - A-5.). *See, e.g., Royal v. Tombone*, 141 F.3d 596, 603-604, n. 10 (5th Cir. 1998) (interpreting similar form as "focused on informing the participant of the rules and regulations of the drug-treatment program and on obtaining the participant's consent for the disclosure of information about his treatment to other agencies for the purpose of developing a comprehensive drug- treatment plan").

Next, there is no violation of due process or equal protection merely because on July 30, 1999 the BOP determined that petitioner's co-conspirator, John Martin Land, was eligible for early release. First, because § 3621(e)(2) leaves sentence reductions "to the unfettered discretion of the BOP, the statute does not create a constitutionally protected liberty interest." *Cook v. Wiley*, 208 F.3d 1314, 1323 (11th Cir. 2000). Moreover, not awarding a one year sentence reduction does not "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents

of prison life." *Jacks v. Crabtree*, 114 F.3d 983, 986, n.4 (9th Cir. 1997) (citing *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). It means only that the prisoner will have to complete his expected sentence. *Id.* As to petitioner's equal protection claim, the constitutional mandate requires only that governmental decision makers refrain from treating similarly situated individuals differently. *Nordlinger v. Hahn*, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992). Petitioner alleges co-conspirator Land was permitted to retain his eligibility for early release and has been granted early release despite the fact that he too received a two-level gun enhancement. The document provided by petitioner in support of this allegation, however, does not indicate Mr. Land was granted early release. Rather, it indicates only that on July 30, 1999 John Land was determined <u>eligible</u> for early release upon completion of RDAP. This decision was consistent with *Kilpatrick,* which was the law as then applied in this district and later became the law of this circuit until *Lopez*. It was also consistent with the notice petitioner received in June 2000 that he (petitioner) was eligible for early release.

Moreover, the records of this court conclusively rebut petitioner's contention that Mr. Land was granted early release. Although it is true that Mr. Land has been released, it appears his release was due to the expiration of his sentence.[4]

Accordingly, for the foregoing reasons, it respectfully RECOMMENDED that:

1. The petition for writ of habeas corpus, (doc. 1), be DENIED and this action be DISMISSED with prejudice.

2. Petitioner's motion for summary judgment (doc. 7), be DENIED.

3. The clerk be directed to close the file.

At Pensacola, Florida, this ___24ᵀᴴ___ day of April, 2002.

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

---

[4]Mr. Land was sentenced to 36 months incarceration on May 27, 1998. *See USA v. Kiernan, et al.*, 2:97cr14031. Judgment was entered on June 4, 1998 (*id.*). Mr. Land was released on June 3, 2001.

*Case No 3:01cv470/RV/MD*

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIAM B. KIERNAN,
       Petitioner,

vs.                                CASE NO.:  3:01cv470/RV/MD

JOSE M. VASQUEZ,
       Respondent.
_____/

## O R D E R

      This cause comes on for consideration upon the magistrate judge's report and recommendation dated April 24, 2002.  The petitioner previously has been furnished a copy of the report and recommendation and has been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1), and I have made a de novo determination of those portions to which an objection has been made.

      Having considered the report and recommendation and all objections thereto timely filed by the parties, I have determined that the report and recommendation should be adopted.

      Accordingly, it is now ORDERED as follows:

1.      The magistrate judge's report and recommendation is adopted and incorporated by reference in this order.

2.      The petition for writ of habeas corpus (doc. 1) is DENIED.

3.      Petitioner's motion for summary judgment (doc. 7) is DENIED.

4.      The clerk is directed to close the file.

DONE AND ORDERED this _22_ day of _August_, 2002.

ROGER VINSON
CHIEF JUDGE

ENTERED ON DOCKET 8/23/02 BY 8
(Rules 58 & 79(a) FRCP or 32(a)(1) & 55(a) FRCrP)

Copies sent to: Kiernan, Finney, MD

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

02 AUG 22  PM 3: 17

FILED

14

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

WILLIAM ABLES,

       Petitioner,

v.                                  CASE NO.  5:08cv204-RH/EMT

IKE EICHENLAUB,

       Respondent.

_____/


## ORDER DENYING PETITION


This case is before the court on the magistrate judge's report and recommendation (document 17).  No objections have been filed.  Upon consideration,

IT IS ORDERED:

The report and recommendation is ACCEPTED.  The clerk must enter judgment stating, "The petition for a writ of habeas corpus is DENIED with prejudice."  The clerk must close the file.

SO ORDERED on April 20, 2009.

s/Robert L. Hinkle_____
Chief United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIAM ABLES,
       Petitioner,

vs.                                  Case No.  5:08cv204/RH/EMT

IKE EICHENLAUB, Warden,[1]
       Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

       This matter is before the court up a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (Doc. 1).  Respondent filed an answer (Doc. 10), and Petitioner filed a reply (Doc. 12).

       The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of the issues raised by Petitioner, it is the opinion of the undersigned that Petitioner is not entitled to relief.

I.      BACKGROUND

       On May 17, 2007, Petitioner was convicted in the United States District Court for the Western District of Tennessee of being a convicted felon in possession of ammunition, in violation of 18 U.S.C. § 922(g), and sentenced to forty-eight (48) months of imprisonment (Doc. 1 at 2; Doc. 10 at 1, Declaration of Sarah M. Schuh ¶ 3).  According to Petitioner's Presentence Investigation Report, Petitioner's conviction was based upon his possession of approximately one hundred (100) rounds of ammunition (*see* Doc. 10, Schuh Decl. ¶ 4, Attach. 2, Presentence Investigation Report).  Petitioner admits he was convicted of possessing "a grab bag of assorted ammunition, 80 rounds that fit at least 13 different guns" (Doc. 12 at 3).

---

[1]Ike Eichenlaub succeeded Scott Middlebrooks as Warden of FCI-Marianna and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

While housed at the Federal Prison Camp in Marianna, Florida, Petitioner was interviewed by Bureau of Prisons (BOP) staff to determine his eligibility for participation in the Residential Drug Abuse Treatment Program (RDAP) (Doc. 10, Schuh Decl. ¶ 12).   Although Petitioner was determined eligible to participate in RDAP and is now participating in the program (*see* Doc. 10, Schuh Decl. ¶ 12, Attach. 6; Doc. 12 at 1), he was deemed ineligible for early release under 18 U.S.C. § 3621(e) because the crime of which he was convicted was listed as an "excluding" crime per the BOP Director's discretion, as set forth in BOP policy (Doc. 1 at 3; Doc. 10, Schuh Decl. ¶¶ 12, 13, Attachs. 5, 6).  Petitioner filed informal and formal grievances at the institutional level, and he appealed the denial of those grievances to the Regional Director of the BOP and the Central Office (*see* Doc. 1 at 3; Doc. 10, Schuh Decl. ¶ 7).  Respondent concedes that Petitioner exhausted his administrative grievances concerning the issue raised in the instant petition (Doc. 10 at 3).

II.      ANALYSIS

In the instant petition, Petitioner challenges the BOP's decision to deny his early release on the following two grounds:  (1) the administrative regulation upon which the BOP's decision was based, specifically, Rule 550.58 of the Code of Federal Regulations, is invalid under the Administrative Procedure Act (APA); and (2) the BOP's applying the exclusion to him but not to inmates housed in the Ninth Circuit Court of Appeals, in light of the Ninth Circuit's determination that Rule 550.58 violated the APA, *see* <u>Arrington v. Daniels</u>, 516 F.3d 1106 (9th Cir. 2008), violates the Equal Protection Clause (Doc. 1 at 3, 6; Doc. 12 at 5).  Respondent contends Petitioner's claims are without merit.

As part of the 1994 Violent Crime Control and Law Enforcement Act, the BOP was charged with making available "appropriate substance abuse treatment" for inmates with "treatable condition(s) of substance addiction or abuse." 18 U.S.C. § 3621(b).  If an inmate completes a drug and alcohol treatment program authorized under 18 U.S.C. § 3621(e),

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

§ 3621(e)(2)(B).  Thus, section 3621(e)(2)(B) provides an incentive for inmates to enroll in and complete the treatment program.

To implement § 3621(e)(2)(B), the BOP promulgated its first rule and corresponding regulation, in 1995, governing substance abuse treatment programs and inmate eligibility for early release consideration under section 3621.  60 Fed. Reg. 27692 (May 25, 1995); 28 C.F.R. § 550.58 (1995).  Because 18 U.S.C. § 3621(e) did not define "nonviolent offense," the BOP relied upon the definition of "crime of violence" as found in 18 U.S.C. § 924(c)(3), to determine whether or not a particular inmate would be eligible for early release as a "non-violent offender."  *See* 60 Fed. Reg. 27692 (May 25, 1995).  Months later, the BOP issued a program statement to implement the early release eligibility provision of 18 U.S.C. § 3621(e) and 28 C.F.R. § 550.58.  *See* Federal Bureau of Prisons Program Statement 5162.02, Definition of Term "Crimes of Violence," § 7.a. (July 24, 1995).  Program Statement 5162.02 not only excluded inmates within the definition of "crime of violence" as established by the 1995 interim rule from eligibility for early release, but additionally excluded inmates with convictions for felon in possession of ammunition under 18 U.S.C. § 922(g) as well as drug trafficking convictions under 21 U.S.C. § 841 or 846, if the offender received a sentence enhancement for weapons possession under United States Sentencing Guidelines Manual § 2D1.1(b)(1).  Program Statement 5162.02, §§ 7, 9.

The Courts of Appeals were divided on whether the BOP had the discretion to exclude drug offenders and felons in possession of firearms and ammunition.  Five Courts of Appeals, including the Eleventh Circuit, held impermissible the BOP's interpretation of § 3621(e) as precluding from eligibility for early release prisoners who received sentence enhancements for nonviolent offenses.  *See* Byrd v. Hasty, 142 F.3d 1395, 1397–98 (11th Cir. 1998); Fristoe v. Thompson, 144 F.3d 627, 631 (10th Cir. 1998) (same); Martin v. Gerlinski, 133 F.3d 1076, 1079–80 (8th Cir. 1998) (same); Roussos v. Menifee, 122 F.3d 159, 162–64 (3d Cir. 1997) (same); Davis v. Crabtree, 109 F.3d 566, 569 (9th Cir. 1997) (same).  Three Courts of Appeals reached the opposite conclusion.  *See* Pelissero v. Thompson, 170 F.3d 442, 447 (4th Cir. 1999) (holding BOP's definition of crime of violence was permissible); Parsons v. Pitzer, 149 F.3d 734, 737–39 (7th Cir. 1998) (same); Venegas v. Henman, 126 F.3d 760, 763 (5th Cir. 1997) (same).

In response to this lack of consistency, the BOP revised 28 C.F.R. § 550.58 in 1997 by issuing an interim rule that asserted the BOP's discretionary authority to determine eligibility for early release under § 3621(e) and removed its reference to § 924(c)(3) from the regulation.  62 Fed.

Reg. 53690 (Oct. 15, 1997).  At the same time the BOP issued the 1997 interim rule, it issued

Program Statement 5162.04 to assist in implementing BOP policies and programs, including the

early release eligibility provision of 18 U.S.C. § 3621(e).   Program Statement 5162.04,

Categorization of Offenses (Oct. 9, 1997).  That Program Statement has two main sections, Section

6, which lists offenses the BOP categorizes as crimes of violence, and Section 7, which lists offenses

that, in the Director's discretion,  preclude an inmate's receiving certain BOP program benefits.  *See*

Program Statement 5162.04, §§ 1, 6, 7.  Petitioner's offense, a violation of 18 U.S.C. § 922(g), is

included in Section 7 of the Program Statement.  Program Statement 5162.04, § 7.e.

Litigation once again ensued. This time challenges focused on whether the categorical

exclusion rule was a permissible exercise of the BOP's discretion.  Two Courts of Appeals,

including the Eleventh Circuit, concluded that the 1997 interim rule was not a permissible exercise

of the BOP's discretion to narrow the class of prisoners eligible for early release under § 3621(e).

*See*  Kilpatrick v. Houston, 197 F.3d 1134, 1135 (11th Cir. 1999); Ward v. Booker, 202 F.3d 1249,

1256–57 (10th Cir. 2000).  Two circuit courts reached the contrary result.  *See* Bellis v. Davis, 186

F.3d 1092, 1095 (8th Cir. 1999); Bowen v. Hood, 202 F.3d 1211, 1220 (9th Cir. 2000).  The

Supreme Court granted certiorari to resolve the circuit split.  In Lopez v. Davis, the Court upheld

the validity of the 1997 interim rule, reasoning that the BOP permissibly exercised the discretion

afforded the agency by the statute to narrow the class of prisoners eligible for early release.  531

U.S. 230, 239–41, 121 S. Ct. 714, 148 L. Ed. 2d 635 (2001).

On December 22, 2000, the BOP promulgated a final rule, which adopted the 1997 interim

rule without change.  *See* 65 Fed. Reg. 80745, 80747–48 (Dec. 22, 2000).  The final rule, 28 C.F.R.

§ 550.58, reads in relevant part:

> An inmate who was sentenced to a term of imprisonment . . . for a nonviolent
> offense, and who is determined to have a substance abuse problem, and successfully
> completes a residential drug abuse treatment program during his or her current
> commitment may be eligible, in accordance with paragraph (a) of this section, for
> early release by a period not to exceed 12 months.

> (a)      Additional early release criteria.

> (1)      As an exercise of the discretion vested in the Director of the Federal
> Bureau of Prisons, the following categories of inmates are not eligible for
> early release:

. . . .
(vi)     Inmates whose current offense is a felony:
. . . .
        (B) That involved the carrying, possession, or use of a firearm or
        other dangerous weapon . . . .

28 C.F.R. § 550.58(a)(1)(vi)(B).  As previously discussed, Program Statement 5162.04 provides that

"[a]n inmate will be denied the benefits of certain programs if his or her offense is either a crime of

violence or an offense identified at the discretion of the Director of the Bureau of Prisons."  Program

Statement 5162.04, § 1 (Oct. 9, 1997).  Section 7 of this program statement lists offenses that

preclude program benefits at the Director's discretion even though the offenses may not be

categorized as crimes of violence.  Included in this list is "[a]ll offenses under 18 U.S.C. § 922(g)."

*Id.*, § 7.e.

     In Petitioner's first claim, he contends the BOP's decision to deny him early release benefits

under 18 U.S.C. § 3621(e) is an abuse of discretion and not in accordance with the law; therefore,

this court should hold unlawful or set aside the decision, pursuant to 5 U.S.C. § 706(2)(A).  Section

706(2)(A) provides that "a reviewing court shall hold unlawful and set aside agency action, findings,

and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in

accordance with law." 5 U.S.C. § 706(2)(A).  "[W]e give deference to a final agency decision by

reviewing for clear error, and we cannot substitute our own judgment for that of the agency."  Sierra

Club v. Johnson, 541 F.3d 1257, 1264 (11th Cir. 2008) (citation omitted).  Under this standard, "we

must consider whether an agency's decision was based on a consideration of the relevant factors and

whether there has been a clear error of judgment."  *Id.* (quotations omitted).  The Supreme Court

articulated the scope of review as follows:

     The scope of review under the "arbitrary and capricious" standard is narrow and a
     court is not to substitute its judgment for that of the agency.  Nevertheless, the
     agency must examine the relevant data and articulate a satisfactory explanation for
     its action including a "rational connection between the facts found and the choice
     made."  In reviewing that explanation, [courts] must "consider whether the decision
     was based on a consideration of the relevant factors and whether there has been a
     clear error of judgment."  Normally, an agency rule would be arbitrary and
     capricious if the agency has relied on factors which Congress has not intended it to
     consider, entirely failed to consider an important aspect of the problem, offered an
     explanation for its decision that runs counter to the evidence before the agency, or

is so implausible that it could not be ascribed to a difference in view or the product
of agency expertise.

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.
Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983).

Agency interpretations of statutes they have responsibility for administering are reviewed
using a two-step analysis. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837,
842, 104 S. Ct. 2778, 2781, 81 L. Ed. 2d 694 (1984). A court must first determine whether Congress
has "directly spoken to the precise question at issue. *Id.*, 467 U.S. at 843. If the intent of Congress
is clear, that is the end of the matter." *Id.* at 843 n.9. If Congress did not express its intent
unambiguously, the court must defer to the agency's interpretation if it "is based on a permissible
construction of the statute." Legal Envtl. Assistance Found., Inc. v. EPA, 118 F.3d 1467, 1473 (11th
Cir. 1997) (quoting Chevron, 467 U.S. at 843). Accordingly, it is well recognized that "when an
agency is charged with administering a statute, part of the authority it receives is the power to give
reasonable content to the statute's textual ambiguities" — in other words, the authority to fill gaps.
Dep't of Treasury, IRS v. Fed. Labor Relations Auth., 494 U.S. 922, 933, 110 S. Ct. 1623, 1629, 108
L. Ed. 2d 914 (1990); *see also* Miami-Dade County v. U.S. E.P.A., 529 F.3d 1049, 1062–63 (11th
Cir. 2008) (citation omitted).

Under the first level of the Chevron analysis, the court employs the "traditional tools of
statutory construction" to determine Congressional intent. *See* Chevron, 467 U.S. at 843 n.9. These
tools include examination of the text of the statute, its structure, and its stated purpose. *See* Miami-
Dade County, 529 F.3d at 1063 (citation omitted).

As previously noted, the relevant statutory text is as follows:

> The period a prisoner convicted of a nonviolent offense remains in custody after
> successfully completing a treatment program may be reduced by the Bureau of
> Prisons, but such reduction may not be more than one year from the term the prisoner
> must otherwise serve.

18 U.S.C. § 3621(e)(2)(B). The statute does not unambiguously state Congressional intent with
regard to the reduction of periods of incarceration for inmates convicted of offenses under 18 U.S.C.
§ 922(g). Furthermore, the statute makes permissive the BOP's determination to grant a reduction
in sentence upon an inmate's successful completion of an RDAP. When an eligible inmate
successfully completes drug treatment, the BOP has the authority, but not the duty, to reduce his

term of imprisonment.  Lopez, 531 U.S. at 241.  Therefore, the court must proceed to the second level of the Chevron analysis, which requires the court to defer to the agency's interpretation if it "is based on a permissible construction of the statute."

Petitioner maintains that 28 C.F.R. § 550.58 is an invalid regulation because the BOP failed to comply with 5 U.S.C. § 706(2)(A) when promulgating the regulation.  Petitioner's argument is based on the Ninth Circuit's decision in Arrington, in which the Ninth Circuit held that the BOP's promulgation of 28 C.F.R. § 550.58(a)(1)(vi)(B) is invalid because the BOP failed to articulate in the administrative record sufficient justification for the regulation when it finalized it on December 22, 2000, thereby rendering it arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) of the APA.[2]  Arrington, 516 F.3d at 1112–16.  The Ninth Circuit reached its decision in Arrington as follows.  It first recognized that under the APA's "arbitrary and capricious" standard set forth at 5 U.S.C. § 706(2)(A), a federal court's scope of review is narrow and deferential.  Arrington, 516 F.3d at 1112 (citation omitted).  It acknowledged that an agency action is valid "if a reasonable basis exists for [the agency's] decision."  Id. (internal quotation and citation omitted).  The Ninth Circuit next stated that a federal court "may look only to the administrative record to determine whether the agency has articulated a rational basis for its decision."  Id. (citing Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 50) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.")) (other citations omitted).  It noted that "[p]ost hoc explanation of agency action by appellate counsel cannot substitute for the agency's own articulation on the basis for its decision."  Id. (citing Fed. Power Comm'n v. Texaco, Inc., 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)).

Next, the Ninth Circuit concluded that the administrative record showed that the BOP articulated one basis for categorically excluding inmates convicted of felonies involving the possession, carrying, or use of firearms from receiving 18 U.S.C. § 3621(e)(2)(B)'s early release benefit:  the need for uniformity in the application of the implementing regulation.  Id. at 1113–14

---

[2]The undersigned is aware that 18 U.S.C. § 3625 provides that:  "The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."  However, § 3625 does not apply to Petitioner's claim because Petitioner does not challenge the making of any determination, decision, or order; rather, he challenges the BOP's rulemaking.  See Jasperson v. Federal Bureau of Prisons, 460 F. Supp. 2d 76, 84 (D.D.C. 2006).  The Bureau does not contend otherwise.

(citing 65 Fed. Reg. 80747 (Dec. 22, 2000)).  The Ninth Circuit then held that this rationale did not justify the BOP's action.  *Id.* at 1114.  It explained:

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical *exclusion* rule.  The Bureau's stated desire for uniformity could have been accomplished in any number of ways.  For example, the Bureau could have achieved uniformity by categorically *including* prisoners with nonviolent convictions involving firearms, thus making them eligible for early release:  a result that would have been entirely consistent with the statute's aim of offering incentives for prisoner participation in residential substance abuse programs.  Instead, it chose to achieve uniformity by categorically *excluding* such prisoners from eligibility.  Although either choice in all likelihood would have withstood judicial scrutiny, the Bureau offered no explanation for why it exercised its discretion to select one rather than the other.  The agency's lack of explanation for its choice renders its decision arbitrary and capricious.  *See, e.g.*, Burlington Truck Lines, Inc., 371 U.S. [156, 167], 83 S. Ct. 239[, 9 L. Ed. 2d 207 (1962)] (striking down action for failure to explain why agency chose one of two available remedies where "[t]here are no findings and no analysis here to justify the choice made, no indication of the basis on which the [agency] exercised its expert discretion").

*Id.* (emphasis in original).

The Ninth Circuit refused to consider the rationale that the BOP chose the categorical exclusion because of the increased risk that offenders with convictions involving firearms might pose to the public.  *Id.* at 1113.  That public safety rationale, the Ninth Circuit concluded, was not stated in the administrative record, but only was articulated in the BOP's brief to the Supreme Court in Lopez.  *Id.* (citing Lopez, 531 U.S. at 23 (quoting Brief for Respondents at 30)).  The Ninth Circuit held that the public safety rationale "is precisely the type of 'post hoc rationalization [ ]' of appellate counsel that we are forbidden to consider in conducting review under the APA."  *Id.* (quoting Burlington Truck Lines, Inc., 371 U.S. at 168).  Therefore, the Ninth Circuit concluded, although the public safety rationale could be considered in evaluating the validity of the regulation under Chevron, *see* Lopez, 531 U.S. at 236–45, it could not be taken into account when evaluating the validity of the regulation under 5 U.S.C. § 706(2)(A) of the APA.  *Id.* at 1113–16.

To date, no court outside the Ninth Circuit has followed Arrington, and most courts have rejected Arrington as contrary to Lopez v. Davis.  *See* Muolo v. Quintana, 593 F. Supp. 2d 776 (W.D. Pa. 2009); Minotti v. Whitehead, 584 F. Supp. 2d 750 (D. Md. 2008); *see also* Norcutt v. Zych, No. 08-CV-14888, 2009 WL 514083 (E.D. Mich. Mar. 2, 2009) (unpublished); Holloway v.

Eichenlaub, No. 08-11347, 2009 WL 416325 (E.D. Mich. Feb. 18, 2009) (unpublished); Griffin v. Federal Bureau of Prisons, No. 3:08-2080-SB, 2009 WL 482352 (D.S.C. Feb. 23, 2009) (unpublished); Gardner v. Grandolsky, No. 08-6127 (RMB), 2009 WL 467848 (D.N.J. Feb. 23, 2009) (unpublished); Johnson v. Phillips, No. 1:08CV179, 2009 WL 304744 (N.D. W.Va. Feb. 6, 2009) (unpublished); Huerta v. Berkebile, No. 3:09-CV-008-L, 2009 WL 230163 (N.D. Tex. Jan. 30, 2009) (unpublished); Martinez v. Berkebile, No. 3-08-CV-1788-D, 2009 WL 159231 (N.D. Tex. Jan. 21, 2009) (unpublished); Cross v. Berkebile, No. 3-08-CV-1379-M, 2009 WL 159280 (N.D. Tex. Jan. 21, 2009) (unpublished); Clark v. Berkebile, No. 3-08-CV-1718-M, 2009 WL 89251 (N.D. Tex. Jan. 13, 2009) (unpublished); Serrano v. Berkebile, No. 3-08-CV-1587-K, 2009 WL 81017 (N.D. Tex. Jan. 9, 2009) (unpublished); Ramirez v. Berkebile, 2008 WL 5435334 (N.D. Tex. Dec. 31, 2008) (unpublished); Snipe v. Dep't of Justice, No. 3:08-cv-22, 2008 WL 5412868 (N.D. W.Va. Dec. 23, 2008) (unpublished); Sinclair v. Eichenlaub, No. 2:07-CV-12967, 2008 WL 5235981 (E.D. Mich. Dec. 15, 2008) (unpublished); Neal v. Grondolsky, 2008 WL 4186901 (D.N.J. Sept.9, 2008) (unpublished); Gatewood v. Outlaw, 2008 WL 2002650 (E.D. Ark. May 8, 2008) (unpublished).

The undersigned declines to follow the Ninth Circuit ruling in Arrington because none of the requirements for an arbitrary and capricious finding is apparent here, and because the BOP's rationale for promulgating 28 C.F.R. § 550.58 withstands the APA's highly deferential standard of review. In its comments in the Federal Register, the BOP explained that it was amending 28 C.F.R. § 550.58 (1995) in order to address the legal issues raised by the courts of appeals in the litigation that followed the enactment of that regulation and Program Statement 5162.02, so that it could uniformly apply its policies throughout the country. 65 Fed. Reg. 80747–48 (Dec. 22, 2000). That rationale is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). *See, e.g.*, Cross, 2009 WL 159280, at **4–7 (rejecting petitioner's APA challenge to BOP's decision not to reduce sentence upon successful complete of drug treatment program due to petitioner's conviction for felon in possession of ammunition under 18 U.S.C. § 922(g)(1)).

Finally, Petitioner's challenge to the BOP's denial of a sentence reduction on equal protection grounds is without merit. To state a claim for an equal protection violation based on the unequal administration or enforcement of neutral statutes and policies, Petitioner must show the

following:  (1) he is similarly situated to others who received different treatment, and (2) the different treatment was motivated by a discriminatory purpose.  Strickland v. Alderman, 74 F.3d 260, 264 (11th Cir. 1996); E&T Realty v. Strickland, 830 F.2d 1107, 1112–13 (11th Cir. 1987). Thus, in order to assert a viable equal protection claim, Petitioner must first make a threshold showing that he was similarly situated in the relevant aspects to those who received more favorable or different treatment.  *See, e.g.*, Campbell v. Rainbow City, Ala., 424 F.3d 1306, 1314–1317 (11th Cir. 2006) (rejecting an equal protection claim where developer had not established that other projects were similarly situated in terms of, *inter alia*, proposed use, number of variances sought, procedural status and documentation presented to zoning board).  Petitioner must also allege Respondent acted with the intent to discriminate against him.  *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E & T Realty, 830 F.2d at 1113.  There must be intentional discrimination: "[m]ere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause."  E & T Realty, 830 F.2d at 1114.  "'Discriminatory purpose' implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of' its adverse effects upon an identifiable group."  *Id.* (quoting Personnel Adm'r v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L. Ed. 2d 870 (1979) (omission in original)).  Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient.  GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998) (finding that allegations that defendants' actions were "arbitrary and capricious in that [they] acted with an improper motive, without reason, or upon a reason that was merely pretextual" were insufficient to state a claim); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

In this case, Petitioner has failed to show that he is similarly situated with those inmates who have received the benefit of the Arrington decision.  Quite simply, while Arrington may be persuasive authority in other jurisdictions, at this time, it is only applicable to inmates within the Ninth Circuit.  Petitioner is not incarcerated within the Ninth Circuit.  Thus, he is not situated the same as those inmates who have thus far received a benefit from that decision.  For that same reason, Petitioner cannot show that his alleged unequal treatment is a result of intentional or purposeful

discrimination; instead, any "unequal treatment" is simply a matter of location.  Therefore, his equal protection claim is without merit.

Accordingly, it is **ORDERED**:

1.      The clerk of court is directed to change the docket to reflect that Ike Eichenlaub is substituted for Scott Middlebrooks as Respondent.

2.      Petitioner's motion to expedite (Doc. 16) is **DENIED** as moot.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

At Pensacola, Florida, this 18th day of March 2009.


                                        /s/ *Elizabeth M. Timothy*
                                        **ELIZABETH M. TIMOTHY**
                                        **UNITED STATES MAGISTRATE  JUDGE**



### NOTICE TO THE PARTIES

**Objections to these findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**